**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOSEPH DANIEL GOADE,** | ) | |
| *an individual,* | ) | **Civil Action No.:**_____ |
| **Plaintiff,** | ) | |
| | ) | **JURY DEMANDED** |
| **v.** | ) | |
| | ) | |
| **PARKER COMPOUND BOWS, INC.** | ) | |
| *a Virginia Corporation,* | ) | |
| **Defendant.** | ) | |

**COMPLAINT**
**FOR PATENT INFRINGEMENT**

Plaintiff Joseph Daniel Goade, by and through his attorney, brings this action against Parker Compound Bows, Inc., for patent infringement of U.S. Letters Patent Nos. 7,721,724 and 7,753,044 in violation of the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, for which Plaintiff demands a jury trial.

**THE PARTIES**

1. Plaintiff, Joseph Daniel Goade ("Plaintiff" or "Goade") is an individual and a resident of the State of Missouri. Plaintiff does business in the Middle District of Tennessee.

2. Upon information and belief, Defendant Parker Compound Bows, Inc. ("Defendant" or "Parker") conducts regular business in this district, and is a corporation organized and existing under the laws of the Commonwealth of Virginia, having its principal place of business at 3022 Lee Jackson Highway, Staunton, Virginia 24401, with a designated registered agent Mr. Robert O. Errett (Parker CEO), RTE 11 South, P.O. Box 105, Mint Spring, Virginia 24463. Parker regularly, systematically, and

purposefully conducts business in the State of Tennessee through selling its products to retail stores and selling directly to the public via Parker's website.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1338(a), and 35 U.S.C. § 271 et seq.

4. This Court has personal jurisdiction over Defendant by reason of its presence in the State of Tennessee because Defendant has physically conducted and continues to physically conduct business throughout the State of Tennessee and in this judicial district, because of Defendant's sufficient contacts to the State of Tennessee, and/or because Defendant has committed and continues to commit, has contributed and continues to contribute to, and has induced and continues to induce acts of patent infringement in this judicial district.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b). *See* **Exhibit 1** (receipts for sale of Defendant's infringing Sidekick compound bow and Thunderhawk Crossbow products in this judicial district at Bass Pro Shop, 323 Opry Mills Drive, Nashville, Tennessee 37214; and receipt for sale of Defendant's infringing String Suppressor Kit (Item# 38-235) product in this judicial district at Outdoor Junction, 1999 East Spring Street, Cookeville, Tennessee 38506).

**GENERAL ALLEGATIONS**

6. Plaintiff is engaged in the business of developing, manufacturing, marketing and selling STS™ string shock suppressors for archery bows, which act to dampen a bow string's vibration at a position near the string's rest state, after a bow string has been drawn and then released to deliver an arrow or bolt. These string shock suppressors

may be sold with an archery bow; and, string shock suppressors may be sold separately as a later add-on or replacement for use on an archery bow.

7. Plaintiff is the sole inventor and owner of United States Letters Patent No. 7,721,724 entitled "Shock Suppressor for a Bow," which issued May 25, 2010 (the '724 patent). A copy of the '724 Patent is attached hereto as **Exhibit 2** and is incorporated by reference. Plaintiff owned the '724 patent throughout the period of Defendant's infringing acts and still owns the patent.

8. Plaintiff is also the sole inventor and owner of United States Letters Patent No. 7,753,044 entitled "Shock Suppressor for a Bow," which issued July 13, 2010 (the '044 patent). A copy of the '044 Patent is attached hereto as **Exhibit 3** and is incorporated herein by reference. Plaintiff owned the '044 patent throughout the period of Defendant's infringing acts and still owns the patent.

9. Plaintiff has complied with the statutory requirement of placing a notice of the Letters Patent on all string shock suppressors it manufactures and sells and has given the Defendant written notice of the infringement.

## THE INFRINGING PRODUCTS AT ISSUE

10. Upon information and belief, Defendant develops, creates, manufactures, imports, distributes, offers for sale, and sells an extensive array of archery bows (both compound and crossbow bows) with included infringing bow string shock suppressors, and also sells infringing bow string shock suppressors as a separate product, collectively referred to herein as the "Parker Archery Products."

11. Upon information and belief, the Parker Archery Products include, but are not limited to, the String Suppressors and PYTHON, VELOCITY, EAGLE, SIDEKICK, and

THUNDERHAWK product models, and also, but not limited to, the Parker Archery products listed in **Exhibit 4**.

12. The Parker Archery Products developed, created, manufactured, imported, distributed, offered for sale, and sold by Defendant infringe, contribute to the infringement of, and/or induce the infringement of the '724 Patent.

13. The Parker Archery Products developed, created, manufactured, imported, distributed, offered for sale, and sold by Defendant infringe, contribute to the infringement of, and/or induce the infringement of the '044 Patent.

14. Upon information and belief, Defendant sold or caused to be sold the Parker Archery Products into this judicial district via several retailers of archery bows both with websites and physical stores located in Nashville, Tennessee and other cities in this judicial district.

## COUNT I
## Infringement of the '724 Patent

15. Plaintiff repeats and realleges each and every allegation of paragraphs 1-14 as though fully set forth herein.

16. Defendant has been and is directly infringing, actively inducing others to infringe, and/or contributing to the infringement of the '724 patent by making, using, importing into the United States, offering for sale, selling, and/or otherwise distributing devices as described in the '724 patent in violation of 35 U.S.C. § 271.

17. Defendant's infringement has injured or will injure Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate it for Defendant's infringement, which in no event can be less than a reasonable royalty.

18. Defendant's infringement has been deliberate, willful, intentional, and with full knowledge of the existence of the '724 patent.

19. Defendant's infringement has caused or will cause Plaintiff substantial damage and irreparable injury by its infringement of the '724 patent, and Plaintiff will continue to suffer damage and irreparable injury unless and until Defendant is enjoined by this Court from continuing its infringement.

20. Plaintiff is entitled to injunctive relief and compensatory relief, including attorneys' fees and costs, as well as enhanced damages pursuant to 35 U.S.C. §§ 271, 281, and 283-285.

## COUNT II
## Infringement of the '044 Patent

21. Plaintiff repeats and realleges each and every allegation of paragraphs 1-20 as though fully set forth herein.

22. Defendant has been and is directly infringing, actively inducing others to infringe, and/or contributing to the infringement of the '044 patent by making, using, importing into the United States, offering for sale, selling, and/or otherwise distributing devices as described in the '044 patent in violation of 35 U.S.C. § 271.

23. Defendant's infringement has injured or will injure Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate it for Defendant's infringement, which in no event can be less than a reasonable royalty.

24. Defendant's infringement has been deliberate, willful, intentional, and with full knowledge of the existence of the '044 patent.

25. Defendant's infringement has caused or will cause Plaintiff substantial damage and irreparable injury by its infringement of the '044 patent, and Plaintiff will continue to

suffer damage and irreparable injury unless and until Defendant is enjoined by this Court from continuing its infringement.

26. Plaintiff is entitled to injunctive relief and compensatory relief, including attorneys' fees and costs, as well as enhanced damages pursuant to 35 U.S.C. §§ 271, 281, and 283-285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph Daniel Goade respectfully requests that this Court enter Judgment in favor of Joseph Daniel Goade against the Defendant Parker Compound Bows, Inc. and grant to Joseph Goade all of the following relief:

a. Enter judgment that Defendant Parker Compound Bows, Inc. has infringed and is infringing the '724 patent;

b. Enter judgment that Defendant Parker Compound Bows, Inc. has infringed and is infringing the '044 patent;

c. Enter judgment that the aforementioned infringement by Defendant Parker Compound Bows, Inc. has been and is willful;

d. Enter an order permanently enjoining Defendant Parker Compound Bows, Inc. and its officers, agents, employees, and all others in active concert or participation with Defendant or any of them from further infringing, whether directly or indirectly, the '724 patent;

e. Enter an order permanently enjoining Defendant Parker Compound Bows, Inc. and its officers, agents, employees, and all others in active concert or participation with Defendant or any of them from further infringing, whether directly or indirectly, the '044 patent;

f.   Award Plaintiff Joseph Daniel Goade his damages in an amount sufficient to compensate Plaintiff for Defendant Parker Compound Bows, Inc.'s infringement of the '724 patent, together with pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

g.   Award Plaintiff Joseph Daniel Goade his damages in an amount sufficient to compensate Plaintiff for Defendant Parker Compound Bows, Inc.'s infringement of the '044 patent, together with pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

h.   Award enhanced damages to Plaintiff Joseph Daniel Goade in an amount not less than three times the compensatory damages awarded by this Court for Defendant Parker Compound Bows, Inc.'s willful infringement of the '724 patent, pursuant to 35 U.S.C. § 284;

i.   Award enhanced damages to Plaintiff Joseph Daniel Goade in an amount not less than three times the compensatory damages awarded by this Court for Defendant Parker Compound Bows, Inc.'s willful infringement of the '044 patent, pursuant to 35 U.S.C. § 284;

j.   Declare this case to be "exceptional" under 35 U.S.C. § 285, and award Plaintiff Joseph Daniel Goade his attorney fees, expenses, and costs incurred in this action; and

k.  Award Plaintiff Joseph Daniel Goade such other and further relief as this

Court deems just and proper.


## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

demands a trial by jury of all issues so triable.

Dated: October 3, 2015


Respectfully submitted,

/s/ Ralph Krisher
Ralph Krisher (BPR # 027054)
2602 Merchants Walk
P.O. Box 330997
Murfreesboro, Tennessee 37133
Tel: (615) 200-0553
Fax: (615) 396-8579

*Attorney for Plaintiff*
*Joseph Daniel Goade*



Go Outdoors Event & Sale May 17-27
Free Outdoor Seminars Activities & More
Oakley/Go Pro Prize Package
Enter here during the Go Outdoors Event
Also, Daily Specials May 24-27
Any Questions Contact Us at 615-514-5200

Sales Person: Galen

| | | |
|---|---|---|
| 009 P Genesis V2 Arrow | | 31.99 |
| 0723560174607 | Rewards Points: 32 | |
| 009 P Vent Arm Guard Cordu | | 16.99 |
| 0046821500138 | Rewards Points: 17 | |
| 009 P Patriot | | 25.99 |
| 0045437032156 | Rewards Points: 26 | |
| 009 P Side-kick Ext Outfitt | | 359.99 |
| | | |
| 0789516158824 | Rewards Points: 360 | |

Accumulated Points: 35
Forgot your Outdoor Rewards Card?
Bring this receipt to the Customer Service
Desk within the next 30 days and they will
enter the points to your account.
The Customer Service Desk can also sign
you up as a new member.

| | | |
|---|---|---|
| Items: 4 | Subtotal | $434.96 |
| Sales Tax | $434.96 @ 9.25% | $40.23 |
| **TOTAL** | | **$475.19** |

GIFTCARD ***************2757    $400.00
Auth Code: 000000   Balance: $0.00
VISA (**1469/REF:22391)        $75.19
AUTH CODE:064077


BPS0200090902003568545

Complete our online survey for a
chance to win a $500 gift card
www.opinionscope.com - code:1199664
NO PURCHASE NECESSARY. Open to legal
US residents 18 or older. Void where
prohibited. See website for all rules.

Keep In Touch
basspro.com/email
facebook.com/bassproshops
twitter.com/bass_pro_shops
youtube.com/basspro
blogs.basspro.com

| STORE | TILL | OP NO. | TRANS. | DATE | TIME |
|---|---|---|---|---|---|
| 0009 | 0902 | 09775 | 356854 | 05-20-13 | 21:00 |

---



Stop by our Customer Service counter
and sign up for our free rewards card
every time you spend money you earn
points towards free outdoor gear.
Any Questions Contact us at 615-514-5200

Sales Person: Kiley Combs

| | | |
|---|---|---|
| 009 P Thunderhawk Package | | 599.99 |
| 0789516160117 | Rewards Points: 600 | |
| 009 P Rope Cocking Aid Kit | | 27.99 |
| 0626192021953 | Rewards Points: 28 | |
| 009 P Lubewax | | 9.99 |
| 0042609160617 | Rewards Points: 10 | |

Accumulated Points: 38
Forgot your Outdoor Rewards Card?
Bring this receipt to the Customer Service
Desk within the next 30 days and they will
enter the points to your account.
The Customer Service Desk can also sign
you up as a new member.

| | | |
|---|---|---|
| Items: 3 | Subtotal | $637.97 |
| Sales Tax | $637.97 @ 9.25% | $59.01 |
| **TOTAL** | | **$696.98** |

GIFTCARD ***************9953    $100.00
Auth Code: 000000   Balance: $0.00
GIFTCARD ***************9946    $500.00
Auth Code: 000000   Balance: $0.00
Debit Card ************7439     $96.98
Auth Code: 432182


BPS0200090906004136093

Complete our online survey for a
chance to win a $500 gift card
www.opinionscope.com - code:1199664
NO PURCHASE NECESSARY. Open to legal
US residents 18 or older. Void where
prohibited. See website for all rules.

Keep In Touch
basspro.com/email
facebook.com/bassproshops
twitter.com/bass_pro_shops
youtube.com/basspro
blogs.basspro.com

| STORE | TILL | OP NO. | TRANS. | DATE | TIME |
|---|---|---|---|---|---|
| 0009 | 0906 | 716412 | 413609 | 09-17-15 | 13:36 |

---

5/20/2013 4:37 PM    Sales Receipt #209382
Store: 1

Outdoor Junction

**Outdoor Junction**
1999 East Spring Street
Cookeville, TN 38506
(931) 520-7500

Cashier: bridgett

| Description 1 | Qty | Price | Ext Price |
|---|---|---|---|
| PARKER SUPPRES | 1 | $41.99 | $41.99 T |
| | | Subtotal | $41.99 |
| Local Sales Tax | 9.75 % Tax | | + $4.09 |
| | | **RECEIPT TOTAL:** | **$46.08** |

Debit Card $46.08  XXXX1469
DEBIT
Reference # 3000016058    Auth=139094
Entry: Swiped         Merchant #***69027

Keep receipt to return merchandise.

209382



US007721724B2

(12) **United States Patent**     (10) **Patent No.:** **US 7,721,724 B2**
Goade                             (45) **Date of Patent:** *May 25, 2010

(54) **SHOCK SUPPRESSOR FOR A BOW**

(76) Inventor: **Joseph Daniel Goade**, 2892 Highway 51 South, Dyersburg, TN (US) 38024

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **11/147,572**

(22) Filed: **Jun. 8, 2005**

(65) **Prior Publication Data**

US 2006/0278207 A1    Dec. 14, 2006

(51) **Int. Cl.**
**F41B 5/20**    (2006.01)

(52) **U.S. Cl.** ...................................... **124/89**; 124/26

(58) **Field of Classification Search** .................. 124/89, 124/86, 25.6; 16/86 R, 86 A, 86 B, 86 C; 267/139, 140, 153
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 1,044,412 A | * | 11/1912 | Newton | 16/85 |
| 1,211,480 A | * | 1/1917 | Newton | 16/85 |
| 1,232,000 A | * | 7/1917 | Chase | 16/85 |
| 1,354,469 A | * | 10/1920 | Joseph | 16/86 A |
| 1,918,652 A | * | 7/1933 | Marbach | 16/82 |
| 4,054,121 A | * | 10/1977 | Hoyt, Jr. | 124/89 |
| 4,061,125 A | * | 12/1977 | Trotter | 124/23.1 |
| 4,461,267 A | * | 7/1984 | Simonds et al. | 124/25.6 |

| | | | | |
|---|---|---|---|---|
| 5,010,622 A | * | 4/1991 | Morita | 16/85 |
| 5,178,122 A | * | 1/1993 | Simonds | 124/25.6 |
| 5,320,085 A | * | 6/1994 | Hanneman | 124/89 |
| 5,392,757 A | * | 2/1995 | Head et al. | 124/86 |
| 5,452,704 A | * | 9/1995 | Winebarger | 124/92 |
| 5,531,211 A | * | 7/1996 | Wilfong, Jr. | 124/86 |
| 5,535,731 A | * | 7/1996 | Webster | 124/89 |
| 5,649,527 A | * | 7/1997 | Olsen et al. | 124/89 |
| 5,720,269 A | * | 2/1998 | Saunders | 124/86 |
| 5,992,403 A | * | 11/1999 | Slates | 124/89 |
| 6,092,516 A | * | 7/2000 | Martin et al. | 124/88 |
| 6,298,842 B1 | * | 10/2001 | Sims | 124/89 |
| 6,634,348 B2 | * | 10/2003 | Gallops, Jr. | 124/25.6 |
| 6,745,757 B2 | * | 6/2004 | Sims | 124/89 |

OTHER PUBLICATIONS

Bow Master Magazine, Grand View Media Group, Summer 2004 edition , Apr. 4, 2004 at pp. 28 and 70. In color.
Comments posted on www.archerytalk.com.

* cited by examiner

*Primary Examiner*—John Ricci
(74) *Attorney, Agent, or Firm*—Defilló & Associates, Inc; Evelyn A. Defilló

(57) **ABSTRACT**

The present invention relates to a suppressor having: a rod having a first end and a second end; a mounting block having at least two bore holes, wherein the rod passes through one of the bore holes, wherein a fastener passes through the other bore hole; a cushion located at the first end of the rod, the cushion having a first face and a second face; and wherein the cushion includes at least one slot at the first face and a treaded portion at the second face. The shock suppressor is mounted to the riser of an archery bow.

**12 Claims, 5 Drawing Sheets**





_Fig. 1_



*Fig. 2*

Case 3:15-cv-01067   Document 1   Filed 10/05/15   Page 12 of 37 PageID #: 12



*Fig. 3*

Case 3:15-cv-01067   Document 1   Filed 10/05/15   Page 13 of 37 PageID #: 13



*Fig. 4*



*Fig. 5*

Case 3:15-cv-01067   Document 1   Filed 10/05/15   Page 15 of 37 PageID #: 15

## SHOCK SUPPRESSOR FOR A BOW

### TECHNICAL FIELD

The present invention relates to archery bows, and particularly to a device for stopping the vibration and sound generated in the process of drawing and releasing the bow string.

### DESCRIPTION OF THE RELATED PRIOR ART

Archery and bow hunting have become increasingly popular sports. This popularity has spawned increasingly sophisticated bows, arrows, and bow accessories.

In the sport of archery, the basic configuration and operation of compound bows are generally known as they have been in use for a long time. Compound bows are used a great deal in hunting, because they provide several distinct advantages. Compound bows mechanically reduce the maximum draw weight, allowing the archer to hold full draw at a draw weight, less than that of the required maximum.

Compound bows also achieve more gradual arrow acceleration upon release with reduced stress on the arrow and the archer, which increases the arrow speed and shooting accuracy.

Compound bows include tension cables and a bowstring, which are connected between the upper and lower bow limbs. It is customary, in order to minimize any twisting torque on the bow limbs, to dispose the bowstring and the tension cables relatively close together, proximate the vertical centerline of the bow.

A drawback of the compound bow is the vibration generated upon releasing the bowstring to propel the arrow. When the bowstring reaches the end of its arrow-propelling path, the cables are propelled forwardly causing considerable hand shock. The portion of the cables which cross in the middle portion of the bow rub against each other to produce noise wasting kinetic energy. If used while hunting, the noise may alert game birds and animals.

Furthermore, the vibration generated when an arrow is launched from the bow gives a strange feeling to the holder of the bow when the arrow is launched. In addition, the vibration has a harmful effect upon the arrow flight.

These problems are apparent in both traditional bows and in compound bows, though it is more pronounced in compound bows since the amount of energy transferred is greater.

Numerous solutions to the above problems have been proposed over the years and the conventional approach to the problem has been to attach a device to the string above the knocking point for the arrow. U.S. Pat. No. 3,837,327 to Saunders et al. shows one of the proposed solutions to this problem.

Other prior art solutions have been to attach a plurality of short pieces of yarn and/or tying a bundle of short and narrow strips of flexible rubber to the string. While these prior art solutions have reduced the noise from bows to a great degree, the problem of deer or other game "jumping the string" as described above is still a problem because the noise has not been eliminated sufficiently.

Since a significant portion of this vibration is generated by the action of the limbs of the archery bow, means have been developed which mount onto the limbs themselves, which absorb or reduce the amount of vibration. However, these means for absorbing the vibration from the limbs have certain disadvantages. In particular, such means are attached to the limbs by an adhesive. This adhesive is subject to failure with the result that the vibration absorbing means will be thrown

off of the limb. If this should occur, this has a very deleterious effect upon the performance of the bow and may result in a broken limb.

However, the major problem with these prior art solutions resides in the fact that attachment of any materials to the bowstring will affect the path and speed of the bowstring, thereby creating an effect on the archer's shot.

Another problem with these prior art solutions resides in the fact that the attachment construction and positioning on the bowstring, while dampening vibration and reducing noise, does tend towards reducing the speed of the arrow.

The arrow speed depends upon several factors, one of the most important being the amount of energy put into the bow. Generally speaking, the more total energy put into the bow, the faster that the arrow will be propelled. Increased arrow speed is desirable, especially when hunting and shooting heavy arrows.

There exists an apparent need for an effective device for dampening vibration and reducing shock specifically in an archery bow, and, at the same time, increases the arrow speed.

### SUMMARY OF THE INVENTION

It is an object of this invention to provide a shock suppressor for an archery bow that reduces the hand shock.

It is another object of the present invention to provide a shock suppressor for an archery bow that is simple and less susceptible to wear and tear.

It is yet another object of the present invention to provide a shock suppressor that decreases the noise generated during the use as to not alert or frighten game birds and animals.

It is yet another object of the present invention to provide a shock suppressor, which is economical to produce and maintain.

It is yet another object of the present invention to provide a shock suppressor, which can easily be installed upon a compound bow and/or re-curve bow.

It is yet another object of the present invention to provide a shock suppressor, which is compatible with left and right hand bows.

It is yet another object of the present invention to provide a shock suppressor, which eliminates the need for an armguard by removing the oscillations of the string, which in turn would normally strike the archers bow arm and/or wrist.

It is yet another object of the present invention to provide a shock suppressor, which makes any bow more forgiving/accurate by launching the arrow at the brace height of the bow instead of the arrow riding the string inside the brace height of the bow toward the riser, before the arrow disengages the bow string.

The present invention relates to shock suppressor for a compound bow, and more particularly, to shock suppressor that reduces noise and vibrations.

The shock suppressor comprising:

a rod having a first end and a second end;

a mounting block having at least two bore holes, wherein the rod passes through one of the bore holes, wherein a fastening means passes through the other bore hole;

a cushion located at the first end of the rod.

The present invention also contemplates a shock suppressor for use with a compound bow, the compound bow having a riser and a pair of opposite bow limbs, a first and a second cable, which cross one another in extending between opposite

bow limbs, a bowstring, an opening for a stabilizer, the shock suppressor comprising:

a rod having a first end and a second end;

a mounting block having at least two bore holes, wherein the first end of the rod passes thru one of the bore holes, wherein a fastening means passes thru the other bore hole;

a cushion attached to the second end of the rod;

wherein the fastening means is attached to the opening of the stabilizer;

wherein the shock suppressor is mounted into the riser below a knocking point.

The foregoing has outlined some of the more pertinent objects of the present invention. These objects should be construed to be merely illustrative of some of the more pertinent features and applications of the invention. Many other beneficial results can be obtained by applying the disclosed invention in a different manner or modifying the invention within the scope of the disclosure. Accordingly, other objects and a fuller understanding of the invention may be had by referring to the summary of the invention and the detailed description describing the preferred embodiment in addition to the scope of the invention defined by the claims taken in conjunction with the accompanying drawings.

### BRIEF DESCRIPTION OF THE FIGURES

For a fuller understanding of the nature and objects of the invention, reference should be made to the following detailed description taken in connection with the accompanying drawings in which:

FIG. **1** is a side view, illustrating the shock suppressor of the present invention attached to a compound bow in a rest position;

FIG. **2** is a closer view of the shock suppressor according to FIG. **1**, showing in detail the shock suppressor.

FIG. **3** is a left side view of the shock suppressor according to FIG. **2**.

FIG. **4** is a side view of the shock suppressor according to the present invention in the assembly position.

FIG. **5** is a perspective view of the disassembled parts of the shock suppressor of the present invention in a disassembling position.

### DETAIL DESCRIPTION OF THE INVENTION

FIG. **1** is a side view, illustrating the shock suppressor **10** of the present invention attached to a compound bow **20** in a rest position. The shock suppressor **10** is used with a conventional compound bow **20** having a bow handle **30**, a riser **35**, and a pair of bow limbs **40**, **50**. The first bow limb **40** and the second bow limb **50** are oppositely positioned in bow riser. Bowstring **60** spans between a first bow tip **70** and a second bow tip **80**. The bowstring **60** then continues and extends over the pulleys, wheels and/or cams **90**A, **90**B positioned at or proximate to each of the bow tips **70**, **80**, and then the two ends of the bowstring **60**, designated first cable end **100** and second cable end **110**, cross to the opposite limb at which point they are attached to define a compound bow **20**.

FIG. **2** shows a magnified view of the shock suppressor according to FIG. **1**, showing in detail the shock suppressor **10**.

FIG. **3** is a left side view of the shock suppressor according to FIG. **2**.

FIG. **4** shows the details of the shock suppressor according to the present invention.

The shock suppressor **10** comprises:

a rod **120** having a first end **122** and a second end **124**;

a mounting block **130** having at least two bore holes **132**, wherein the rod passes thru one of the bore holes, wherein a fastening means **134** passes thru the other bore hole;

a cushion **140** located at the first end of the rod **120**.

Rod

The rod **120** is a made of a rigid material such as aluminum plastic, steel, titanium, composite material, such as fiberglass, carbon composite, or carbon laminate.

The length of the rod is between 5 to 15 inches, preferably 11.5 inches.

In a preferable embodiment, the rod has an offset bend shape.

Mounting Block

The mounting block **130** is a made of a rigid material, such as—aluminum, steel, titanium, fiberglass, carbon composite, or carbon laminate.

The mounting block can be of any desirable size. In a preferable embodiment of the present invention, the mounting block **130** is approximately 2 inches wide by ¾ inch long.

The mounting block **130** includes at least two bore holes **132**. The rod **120** passes through one of the bore holes and a fastening means **134** passes through the other bore hole.

The diameter of the borehole can vary, depending on the diameter of the rod and the diameter of the fastener. The first borehole being preferably 5⁄16 of an inch in diameter, and the second borehole being ⅜ of an inch.

The design of the mounting block allows the user to adjust the length of the rod **120** to just touch the bowstring **60** for an optimal performance. In this way, the distance between the riser and the cushion may be quickly and easily adjusted.

The mounting block is held onto the riser of the bow, where the stabilizer normally goes, by the fastening means **134** such as a bolt and/or set screw.

The mounting block can be attached to the bow in either the front or rear stabilizer holes (if your bow is so equipped).

The block thickness is between 0.2 to 1.5 inches, preferably ¾ inch.

Cushion

Cushion **140** may be formed of flexible thermoplastic elastomeric material, such as—rubber or urethane, or a closed-cell, waterproof foam. It is required that the material of the cushion is resiliently compressible and provides sound deadening characteristics when an object strikes the cushion member.

While it is believed that virtually any material would be effective for cushion **140**, the best results have been achieved with a resilient rubber material, which provides a compressible "grip" on the string, or with a closed cell foam material.

In another preferable embodiment, the cushion includes an end cap **148** made of nylon and/or a plastic piece. The end cap is press fitted onto the rod end and then the cushion is affixed by a glue or adhesive to the end cap.

In a least preferable embodiment, the present invention contemplates the use of either a solid or semi-solid material, such as—a gel material.

Cushion **140** may be of cylindrical shaped, preferably a mushroom shaped, but not limited to this shape. The diameter of the cushion is between 0.5 and 2.0 inches, preferably 1.25" inches in diameter.

5

As best seen in FIG. **3**, cushion **140** includes a slot or crossed slot **144** formed in the forward face of the cushion. Slot **144** receives the bowstring **60**.

Referring now back to FIG. **1**, it can be seen that rod **120** of shock suppressor **10** is connected to the riser **35** by the mounting block **130**. To launch an arrow, bowstring **60** is pulled rearwardly to the "drawn" position (not shown).

Cushion **140** is mounted to the end cap, which is affixed to the rod **120** such that the contact surface **146** of cushion **140** is in physical contact with bow string **60** in the "rest" position.

Cushion **140** is oriented with its longitudinal axis generally perpendicular to bowstring **60** in the "rest" position. Once bowstring **60** is drawn rearwardly to the drawn position and released, it will contact the rubber stopper. The material of the cushion serves to suddenly stop the movement of bowstring **60**, forcing the arrow to leave the string at its brace height instead of the string traveling forward, past its brace height and then, the arrow being released quicker.

It has been found that the use of a rubber material dampens the vibration movement of the string in several ways. While a small "thud" sound occurs with the use of the shock suppressor of the present invention, the noise is much quieter and lower frequency, and therefore, less likely to startle or alarm game since low frequency sound is less directional.

The design of the shock suppressor, according to the present invention, enables the end user to easily attach or detach the shock suppressor into any archery bow, without the necessity of using tools or the removal of the cables and string.

In order to disassemble the shock suppressor, the fastening means is simply unscrewed from the hole, where the stabilizer is usually mounted.

It should be appreciated by one skilled in the art that the shock suppressor according to the present invention may be used on a re-curve bow or compound bow without varying from the invention.

The invention has been described in an illustrative manner, and it is to be understood that the terminology, which has been used, is intended to be in the nature of words of description rather than of limitation.

What is claimed is:

**1**. A combination of an archery bow and a shock suppressor mounted on the archery bow, the shock suppressor comprising:

a rigid rod having a first end, a second end, and a length;
a mounting block having at least two bore holes, wherein the first end of the rigid rod passes through one of the bore holes,
a fastening means passing through the other bore hole;
wherein the mounting block is mounted to the bow by screwing the fastening means into a hole on a riser of the bow;
wherein the rigid rod is connected to the riser of the bow by the mounting block;
a cushion attached to the second end of the rigid rod;
wherein the length of the rod is adjustable; and
wherein the length of the rod is adjusted by sliding the first end of the rod forward or backward through the bore hole.

**2**. A combination of an archery bow and a shock suppressor mounted on the archery bow, the shock suppressor comprising:

a rigid rod having a first end, a second end, and a length;
a mounting block having at least two bore holes, wherein the first end of the rigid rod passes through one of the bore holes,
a fastening means passing through the other bore hole;

6

wherein the mounting block is mounted to the bow by screwing the fastening means into a hole on a riser on the bow;
wherein the rigid rod is connected to the riser of the bow by the mounting block;
a cushion attached to the second end of the rigid rod;
wherein the rigid rod has an offset bend shape;
wherein the length of the rod is adjustable; and
wherein the length of the rod is adjusted by sliding the first end of the rod forward or backward through the bore hole.

**3**. The combination of claim **2**, wherein the rigid rod is made of an aluminum, plastic, steel, titanium, fiberglass, carbon composite, or carbon laminate.

**4**. The combination of claim **2**, wherein the length of the rod is between 5 to 15 inches.

**5**. The combination of claim **2**, wherein the mounting block is made of aluminum, steel, titanium, fiberglass, carbon composite, or carbon laminate.

**6**. The combination of claim **2**, wherein the mounting block has a size of 2 inches wide and ¾ inches long.

**7**. The combination of claim **2**, wherein the cushion is made of rubber, urethane, or closed cell waterproof foam.

**8**. A compound bow comprising:

a riser having at least one hole,
a pair of opposite bow limbs,
a first and a second bowstring, which cross one another in extending between opposite bow limbs,
a shock suppressor,
wherein the shock suppressor comprises:

a rigid rod having a first end, a second end, and a length;
a mounting block having at least two bore holes,
wherein the first end of the rigid rod passes through one of the bore holes of the mounting block and wherein the mounting block is positioned in direct contact to the riser of the bow;
wherein a fastening means passes through the other bore hole and is screwed into the hole of the riser;
wherein the length of the rod is adjustable; and
a cushion attached to the second end of the rigid rod, the cushion having an outer surface and an inner surface;
wherein the shock suppressor is mounted into the riser below a knocking point;
wherein when the bowstring is drawn to a draw position and released, the outer surface of the cushion physically contacts the bowstring.

**9**. The compound bow according to claim **8**, wherein the cushion further comprises an end cap, wherein the end cap is attached between the cushion and the second end of the rod.

**10**. The compound bow according to claim **8**, wherein the rigid rod is an offset rod.

**11**. The compound bow according to claim **8**, wherein the cushion comprises a slot formed in the forward face of the cushion, wherein the slot receives the bowstring of the compound bow.

**12**. A combination of an archery bow and a shock suppressor mounted on the archery bow, the shock suppressor comprising:

a rigid rod having a first end, a second end, and a length;
a mounting block having at least two bore holes, wherein the first end of the rigid rod passes through one of the bore holes of the mounting block and wherein the

mounting block is positioned in direct contact to a riser of the bow, wherein a fastening means passes through the other bore hole and into the bow riser;

wherein the length of the rod is adjustable; and

a cushion attached to the second end of the rigid rod, the cushion having a forward face and a backward face;

wherein the cushion comprises a slot formed in the forward face of the cushion, wherein the slot receives the bow-string of the archery bow.

* * * * *



US007753044B2

(12) **United States Patent** (10) **Patent No.:** **US 7,753,044 B2**
Goade (45) **Date of Patent:** *****Jul. 13, 2010**

(54) **SHOCK SUPPRESSOR FOR A BOW**

(76) Inventor: **Joseph Daniel Goade**, 2892 Highway 51 South, Dyersburg, TN (US) 38024

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 54 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **12/070,758**

(22) Filed: **Feb. 21, 2008**

(65) **Prior Publication Data**

US 2008/0141993 A1    Jun. 19, 2008

**Related U.S. Application Data**

(63) Continuation of application No. 11/147,572, filed on Jun. 8, 2005.

(51) **Int. Cl.**
*F41B 5/00* (2006.01)

(52) **U.S. Cl.** ........................................... **124/89**; 124/86

(58) **Field of Classification Search** ............... 124/23.1, 124/25.6, 86, 88, 89; 16/86 R, 86 A, 86 B, 16/86 C; 267/139, 140, 153
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 1,044,412 | A | * | 11/1912 | Newton | .......................... 16/85 |
| 1,211,480 | A | * | 1/1917 | Newton | .......................... 16/85 |
| 1,232,000 | A | * | 7/1917 | Chase | .......................... 16/85 |
| 1,354,469 | A | * | 10/1920 | Daniele | ...................... 16/86 A |
| 1,918,652 | A | * | 7/1933 | Marbach | ........................ 16/82 |
| 4,054,121 | A | * | 10/1977 | Hoyt, Jr. | ...................... 124/89 |
| 4,061,125 | A | * | 12/1977 | Trotter | ...................... 124/23.1 |
| 4,461,267 | A | * | 7/1984 | Simonds et al. | ............ 124/25.6 |
| 5,010,622 | A | * | 4/1991 | Morita | ........................... 16/85 |
| 5,320,085 | A | * | 6/1994 | Hanneman | .................... 124/89 |
| 5,452,704 | A | * | 9/1995 | Winebarger | ................. 124/92 |
| 5,535,731 | A | * | 7/1996 | Webster | ...................... 124/89 |
| 5,649,527 | A | * | 7/1997 | Olsen et al. | ................. 124/89 |
| 5,720,269 | A | * | 2/1998 | Saunders | ...................... 124/86 |
| 5,992,403 | A | * | 11/1999 | Slates | ........................ 124/89 |
| 6,092,516 | A | * | 7/2000 | Martin et al. | ................. 124/88 |
| 6,298,842 | B1 | * | 10/2001 | Sims | ........................... 124/89 |
| 6,634,348 | B2 | * | 10/2003 | Gallops, Jr. | ............... 124/25.6 |
| 6,745,757 | B2 | * | 6/2004 | Sims | ........................... 124/89 |

OTHER PUBLICATIONS

Bow Master Magazine, Grand View Media Group, Summer 2004 Edition, Apr. 4, 2004, pp. 28 and 70.*

* cited by examiner

*Primary Examiner*—John Ricci
(74) *Attorney, Agent, or Firm*—DeFillo & Associates, Inc; Evelyn A. DeFillo

(57) **ABSTRACT**

The present invention relates to a suppressor having: a rod having a first end and a second end; a mounting block having at least two bore holes, wherein the rod passes through one of the bore holes, wherein a fastener passes through the other bore hole; a cushion located at the first end of the rod, the cushion having a first face and a second face; and wherein the cushion includes at least one slot at the first face and a treaded portion at the second face. The shock suppressor is mounted to the riser of an archery bow.

**6 Claims, 5 Drawing Sheets**





_Fig. 1_



*Fig. 2*



*Fig. 3*



*Fig. 4*

Case 3:15-cv-01067   Document 1   Filed 10/05/15   Page 24 of 37 PageID #: 24



*Fig. 5*

Case 3:15-cv-01067   Document 1   Filed 10/05/15   Page 25 of 37 PageID #: 25

## SHOCK SUPPRESSOR FOR A BOW

### REFERENCE TO RELATED APPLICATIONS

This application is a Continuation of application Ser. No. 11/147,572 filed Jun. 8, 2005, allowed Dec. 26, 2007.

### TECHNICAL FIELD

The present invention relates to archery bows, and particularly to a device for stopping the vibration and sound generated in the process of drawing and releasing the bow string.

### DESCRIPTION OF THE RELATED PRIOR ART

Archery and bow hunting have become increasingly popular sports. This popularity has spawned increasingly sophisticated bows, arrows, and bow accessories.

In the sport of archery, the basic configuration and operation of compound bows are generally known as they have been in use for a long time. Compound bows are used a great deal in hunting, because they provide several distinct advantages. Compound bows mechanically reduce the maximum draw weight, allowing the archer to hold full draw at a draw weight, less than that of the required maximum.

Compound bows also achieve more gradual arrow acceleration upon release with reduced stress on the arrow and the archer, which increases the arrow speed and shooting accuracy.

Compound bows include tension cables and a bowstring, which are connected between the upper and lower bow limbs. It is customary, in order to minimize any twisting torque on the bow limbs, to dispose the bowstring and the tension cables relatively close together, proximate the vertical centerline of the bow.

A drawback of the compound bow is the vibration generated upon releasing the bowstring to propel the arrow. When the bowstring reaches the end of its arrow-propelling path, the cables are propelled forwardly causing considerable hand shock. The portion of the cables which cross in the middle portion of the bow rub against each other to produce noise wasting kinetic energy. If used while hunting, the noise may alert game birds and animals.

Furthermore, the vibration generated when an arrow is launched from the bow gives a strange feeling to the holder of the bow when the arrow is launched. In addition, the vibration has a harmful effect upon the arrow flight.

These problems are apparent in both traditional bows and in compound bows, though it is more pronounced in compound bows since the amount of energy transferred is greater.

Numerous solutions to the above problems have been proposed over the years and the conventional approach to the problem has been to attach a device to the string above the knocking point for the arrow. U.S. Pat. No. 3,837,327 to Saunders et al. shows one of the proposed solutions to this problem.

Other prior art solutions have been to attach a plurality of short pieces of yarn and/or tying a bundle of short and narrow strips of flexible rubber to the string. While these prior art solutions have reduced the noise from bows to a great degree, the problem of deer or other game "jumping the string" as described above is still a problem because the noise has not been eliminated sufficiently.

Since a significant portion of this vibration is generated by the action of the limbs of the archery bow, means have been developed which mount onto the limbs themselves, which absorb or reduce the amount of vibration. However, these means for absorbing the vibration from the limbs have certain disadvantages. In particular, such means are attached to the limbs by an adhesive. This adhesive is subject to failure with the result that the vibration absorbing means will be thrown off of the limb. If this should occur, this has a very deleterious effect upon the performance of the bow and may result in a broken limb.

However, the major problem with these prior art solutions resides in the fact that attachment of any materials to the bowstring will affect the path and speed of the bowstring, thereby creating an effect on the archer's shot.

Another problem with these prior art solutions resides in the fact that the attachment construction and positioning on the bowstring, while dampening vibration and reducing noise, does tend towards reducing the speed of the arrow.

The arrow speed depends upon several factors, one of the most important being the amount of energy put into the bow. Generally speaking, the more total energy put into the bow, the faster that the arrow will be propelled. Increased arrow speed is desirable, especially when hunting and shooting heavy arrows.

There exists an apparent need for an effective device for dampening vibration and reducing shock specifically in an archery bow, and, at the same time, increases the arrow speed.

### SUMMARY OF THE INVENTION

It is an object of this invention to provide a shock suppressor for an archery bow that reduces the hand shock.

It is another object of the present invention to provide a shock suppressor for an archery bow that is simple and less susceptible to wear and tear.

It is yet another object of the present invention to provide a shock suppressor that decreases the noise generated during the use as to not alert or frighten game birds and animals.

It is yet another object of the present invention to provide a shock suppressor, which is economical to produce and maintain.

It is yet another object of the present invention to provide a shock suppressor, which can easily be installed upon a compound bow and/or re-curve bow.

It is yet another object of the present invention to provide a shock suppressor, which is compatible with left and right hand bows.

It is yet another object of the present invention to provide a shock suppressor, which eliminates the need for an armguard by removing the oscillations of the string, which in turn would normally strike the archers bow arm and/or wrist.

It is yet another object of the present invention to provide a shock suppressor, which makes any bow more forgiving/accurate by launching the arrow at the brace height of the bow instead of the arrow riding the string inside the brace height of the bow toward the riser, before the arrow disengages the bow string.

The present invention relates to shock suppressor for a compound bow, and more particularly, to shock suppressor that reduces noise and vibrations.

The shock suppressor comprising:

a rod having a first end and a second end;

a mounting block having at least two bore holes, wherein the rod passes through one of the bore holes, wherein a fastening means passes through the other bore hole;

a cushion located at the first end of the rod.

The present invention also contemplates a shock suppressor for use with a compound bow, the compound bow having a riser and a pair of opposite bow limbs, a first and a second

cable, which cross one another in extending between opposite bow limbs, a bowstring, an opening for a stabilizer, the shock suppressor comprising:

a rod having a first end and a second end;

a mounting block having at least two bore holes, wherein the first end of the rod passes thru one of the bore holes, wherein a fastening means passes thru the other bore hole;

a cushion attached to the second end of the rod;

wherein the fastening means is attached to the opening of the stabilizer;

wherein the shock suppressor is mounted into the riser below a knocking point.

The foregoing has outlined some of the more pertinent objects of the present invention. These objects should be construed to be merely illustrative of some of the more pertinent features and applications of the invention. Many other beneficial results can be obtained by applying the disclosed invention in a different manner or modifying the invention within the scope of the disclosure. Accordingly, other objects and a fuller understanding of the invention may be had by referring to the summary of the invention and the detailed description describing the preferred embodiment in addition to the scope of the invention defined by the claims taken in conjunction with the accompanying drawings.

### BRIEF DESCRIPTION OF THE FIGURES

For a fuller understanding of the nature and objects of the invention, reference should be made to the following detailed description taken in connection with the accompanying drawings in which:

FIG. **1** is a side view, illustrating the shock suppressor of the present invention attached to a compound bow in a rest position;

FIG. **2** is a closer view of the shock suppressor according to FIG. **1**, showing in detail the shock suppressor.

FIG. **3** is a left side view of the shock suppressor according to FIG. **2**.

FIG. **4** is a side view of the shock suppressor according to the present invention in the assembly position.

FIG. **5** is a perspective view of the disassembled parts of the shock suppressor of the present invention in a disassembling position.

### DETAIL DESCRIPTION OF THE INVENTION

FIG. **1** is a side view, illustrating the shock suppressor **10** of the present invention attached to a compound bow **20** in a rest position. The shock suppressor **10** is used with a conventional compound bow **20** having a bow handle **30**, a riser **35**, and a pair of bow limbs **40**, **50**. The first bow limb **40** and the second bow limb **50** are oppositely positioned in bow riser. Bowstring **60** spans between a first bow tip **70** and a second bow tip **80**. The bowstring **60** then continues and extends over the pulleys, wheels and/or cams **90**A, **90**B positioned at or proximate to each of the bow tips **70**, **80**, and then the two ends of the bowstring **60**, designated first cable end **100** and second cable end **110**, cross to the opposite limb at which point they are attached to define a compound bow **20**.

FIG. **2** shows a magnified view of the shock suppressor according to FIG. **1**, showing in detail the shock suppressor **10**.

FIG. **3** is a left side view of the shock suppressor according to FIG. **2**.

FIG. **4** shows the details of the shock suppressor according to the present invention.

The shock suppressor **10** comprises:

a rod **120** having a first end **122** and a second end **124**;

a mounting block **130** having at least two bore holes **132**, wherein the rod passes thru one of the bore holes, wherein a fastening means **134** passes thru the other bore hole;

a cushion **140** located at the first end of the rod **120**.

Rod

The rod **120** is a made of a rigid material such as aluminum plastic, steel, titanium, composite material, such as fiberglass, carbon composite, or carbon laminate.

The length of the rod is between 5 to 15 inches, preferably 11.5 inches.

In a preferable embodiment, the rod has an offset bend shape.

Mounting Block

The mounting block **130** is a made of a rigid material, such as—aluminum, steel, titanium, fiberglass, carbon composite, or carbon laminate.

The mounting block can be of any desirable size. In a preferable embodiment of the present invention, the mounting block **130** is approximately 2 inches wide by ¾ inch long.

The mounting block **130** includes at least two bore holes **132**. The rod **120** passes through one of the bore holes and a fastening means **134** passes through the other bore hole.

The diameter of the borehole can vary, depending on the diameter of the rod and the diameter of the fastener. The first borehole being preferably 5/16 of an inch in diameter, and the second borehole being ⅜ of an inch.

The design of the mounting block allows the user to adjust the length of the rod **120** to just touch the bowstring **60** for an optimal performance. In this way, the distance between the riser and the cushion may be quickly and easily adjusted.

The mounting block is held onto the riser of the bow, where the stabilizer normally goes, by the fastening means **134** such as a bolt and/or set screw.

The mounting block can be attached to the bow in either the front or rear stabilizer holes (if your bow is so equipped).

The block thickness is between 0.2 to 1.5 inches, preferably ¾ inch.

Cushion

Cushion **140** may be formed of flexible thermoplastic elastomeric material, such as—rubber or urethane, or a closed-cell, waterproof foam. It is required that the material of the cushion is resiliently compressible and provides sound deadening characteristics when an object strikes the cushion member.

While it is believed that virtually any material would be effective for cushion **140**, the best results have been achieved with a resilient rubber material, which provides a compressible "grip" on the string, or with a closed cell foam material.

In another preferable embodiment, the cushion includes an end cap **148** made of nylon and/or a plastic piece. The end cap is press fitted onto the rod end and then the cushion is affixed by a glue or adhesive to the end cap.

In a least preferable embodiment, the present invention contemplates the use of either a solid or semi-solid material, such as—a gel material.

Cushion **140** may be of cylindrical shaped, preferably a mushroom shaped, but not limited to this shape. The diameter of the cushion is between 0.5 and 2.0 inches, preferably 1.25" inches in diameter.

As best seen in FIG. **3**, cushion **140** includes a slot or crossed slot **144** formed in the forward face of the cushion. Slot **144** receives the bowstring **60**.

Referring now back to FIG. **1**, it can be seen that rod **120** of shock suppressor **10** is connected to the riser **35** by the mounting block **130**. To launch an arrow, bowstring **60** is pulled rearwardly to the "drawn" position (not shown)

Cushion **140** is mounted to the end cap, which is affixed to the rod **120** such that the contact surface **146** of cushion **140** is in physical contact with bow string **60** in the "rest" position.

Cushion **140** is oriented with its longitudinal axis generally perpendicular to bowstring **60** in the "rest" position. Once bowstring **60** is drawn rearwardly to the drawn position and released, it will contact the rubber stopper. The material of the cushion serves to suddenly stop the movement of bowstring **60**, forcing the arrow to leave the string at its brace height instead of the string traveling forward, past its brace height and then, the arrow being released quicker.

It has been found that the use of a rubber material dampens the vibration movement of the string in several ways. While a small "thud" sound occurs with the use of the shock suppressor of the present invention, the noise is much quieter and lower frequency, and therefore, less likely to startle or alarm game since low frequency sound is less directional.

The design of the shock suppressor, according to the present invention, enables the end user to easily attach or detach the shock suppressor into any archery bow, without the necessity of using tools or the removal of the cables and string.

In order to disassemble the shock suppressor, the fastening means is simply unscrewed from the hole, where the stabilizer is usually mounted.

It should be appreciated by one skilled in the art that the shock suppressor according to the present invention may be used on a re-curve bow or compound bow without varying from the invention.

The invention has been described in an illustrative manner, and it is to be understood that the terminology, which has been used, is intended to be in the nature of words of description rather than of limitation.

What is claimed is:

**1**. A shock suppressor adapted to be use with a bow, the shock suppressor comprising:

a rigid rod having a first end and a second end, wherein the second end of the rigid rod includes a tip;

a mounting block adapted to be mounted in direct contact with the bow, wherein the mounting block includes at least two bore holes;

a cushion surrounding the tip of the second end of the rigid rod;

wherein the first end of the rigid rod passes through one of the bore holes;

wherein a threaded fastening means passes through the other bore hole and is adapted to be threaded to a hole in the bow.

**2**. The shock suppressor of claim **1**, wherein the threaded fastening means is selected from a screw or bolt.

**3**. The shock suppressor according to claim **1**, wherein the rigid rod is an offset rod.

**4**. The shock suppressor according to claim **1**, wherein the tip of the rigid rod is threaded and wherein the cushion is threaded to the tip.

**5**. The shock suppressor according to claim **4**, wherein the cushion is interchangeable.

**6**. A shock suppressor adapted to be use with a bow, the shock suppressor comprising:

a rigid rod having a first end and a second end, wherein the second end of the rigid rod includes a tip;

a mounting block adapted to be mounted in direct contact with the bow, wherein the mounting block includes at least two bore holes;

a cushion surrounding the tip of the second end of the rigid rod;

wherein the first end of the rigid rod passes through one of the bore holes;

wherein a threaded fastening means passes through the other bore hole and is adapted to be threaded to a hole in the bow;

wherein the cushion has a mushroom shape.

\* \* \* \* \*

# EXHIBIT 4

***FROM THE PARKER BOW 2015 CATALOG AT URL***
http://d1jze0g8s83f2g.cloudfront.net/images/pdfs/ParkerBows2015_Catalog_Web.pdf

COMPOUND BOWS:

VIKING # C110
ULTRA LITE 30+ # C316
EAGLE # C320
BLACK EAGLE # C321
LIGHTNING #C407
BLACK LIGHTNING # C408
PINK LIGHTNING # C409

COMPOUND BOW OUTFITTER PACKAGES:

ULTRA LITE OUTFITTER PACKAGE
EAGLE OUTFITTER PACKAGE
BLACK EAGLE OUTFITTER PACKAGE
LIGHTNING OUTFITTER PACKAGE
BLACK LIGHTNING OUTFITTER PACKAGE
PINK LIGHTNING OUTFITTER PACKAGE

CROSSBOWS:

CONCORDE W/QUICK DRAW SYSTEM # X110
GALE FORCE # X116
TORNADO F4 # X121
CENTERFIRE # X211
THUNDERHAWK # X221
BLACKHAWK # X226
ENFORCER # X301

CROSSBOW OUTFITTER PACKAGES:

CONCORDE W/QUICK DRAW SYSTEM OUTFITTER PACKAGE
GALE FORCE OUTFITTER PACKAGE
TORNADO F4 OUTFITTER PACKAGE
CENTERFIRE OUTFITTER PACKAGE
THUNDERHAWK OUTFITTER PACKAGE
BLACKHAWK OUTFITTER PACKAGE
ENFORCER OUTFITTER PACKAGE

OPTIONAL ACCESSORY:

BUSHWACKER CROSSBOW
CHALLENGER CROSSBOW

STRING SUPPRESSOR KITS:

THUNDERHAWK # 38-2351
BLACKHAWK # 38-2351
CHALLENGER # 38-2351
ENFORCER (2013 & 2014) # 38-2352
BUSHWACKER (2013 & LATER) # 38-2353

*note that the #'s listed are Parker's model #'s*

***FROM THE 2014 PARKER BOWS CATALOG AT URL***

http://issuu.com/parkerbows/docs/parkerbows_2014productguide_web?e=7268327%2F6177363

COMPOUND BOWS:

VIKING # C110
KODIAK # C315
EAGLE # C320
BLACK EAGLE # C321
LIGHTNING # C407
BLACK LIGHTNING # C408
PINK LIGHTNING # C409

OUTFITTER PACKAGES:

KODIAK OUTFITTER PACKAGE
EAGLE OUTFITTER PACKAGE
BLACK EAGLE OUTFITTER PACKAGE
LIGHTNING OUTFITTER PACKAGE
BLACK LIGHTNING OUTFITTER PACKAGE
PINK LIGHTNING OUTFITTER PACKAGE

CROSSBOWS:

CONCORDE # X110
GALE FORCE # X115
TORNADO F4 #X120
CENTERFIRE # X211

OUTFITTER PACKAGES:

CONCORDE OUTFITTER PACKAGE
GALE FORCE OUTFITTER PACKAGE
TORNADO F4 OUTFITTER PACKAGE
CENTERFIRE OUTFITTER PACKAGE

CROSSBOW OPTIONAL ACCESSORY:

THUNDERHAWK
BLACK HAWK
BUSHWACKER
CHALLENGER

STRING SUPPRESSOR KIT CROSSBOWS:

THUNDERHAWK # 38-2351
BLACKHAWK # 38-2351
CHALLENGER # 38-2351
ENFORCER (2013 & 2014) # 38-2352
BUSHWACKER # 38-2353

***FROM THE 2013 PARKER BOWS CATALOG AT URL***
https://docs.google.com/file/d/0B6U0Qmyr0cUIRFIzMnZlQlZwR2s/edit?pli=1

<u>COMPOUND BOWS:</u>

PYTHON #C105
VELOCITY #C310
EAGLE #C320
SIDEKICK EXTREME  #C400
PINK SIDEKICK EXTREME #C401

<u>OUTFITTER PACKAGES:</u>

PYTHON OUTFITTER PACKAGE
VELOCITY OUTFITTER PACKAGE
EAGLE OUTFITTER PACKAGE
SIDEKICK EXTREME OUTFITTER PACKAGE
PINK SIDEKICK EXTREME OUTFITTER PACKAGE

<u>CROSSBOWS:</u>

GALE FORCE #X115
TORNADO F4 #X120
HORNET EXTREME #X215
CONCORDE #X110

<u>CROSSBOW OUTFITTER PACKAGES:</u>

GALE FORCE OUTFITTER PACKAGE
TORNADO F4 OUTFITTER PACKAGE
HORNET EXTREME OUTFITTER PACKAGE
CONCORDE OUTFITTER PACKAGE

<u>STRING SUPPRESSOR KITS:</u>

CYCLONE #38-233 (EXCLUDES 2008 CYCLONE)
TORNADO #38-233
BUSHWACKER #38-234
ENFORCER #38-234
PANTHER #38-234
HORNET EXTREME #38-235
THUNDERHAWK #38-2351
BLACKHAWK #38-2351
CHALLENGER #38-2351

***FROM THE 2012 PARKER BOWS CATALOG AT URL***
http://parkerbows.com/images/Parker_Product_Guide.pdf

<u>COMPOUND BOWS:</u>

PYTHON # C105
INFERNO # C210
INFERNO FIRESTORM PACKAGE # C210-FS
VELOCITY # C310
WILDFIRE EXTREME # C300
BLAZER #C305
SIDEKICK #C400
SIDEKICK PINK #C401
SIDEKICK EXTREME

<u>OUTFITTER PACKAGES:</u>

PYTHON OUTFITTER PACKAGE
INFERNO OUTFITTER PACKAGE
VELOCITY OUTFITTER PACKAGE
WILDFIRE EXTREME OUTFITTER PACKAGE
BLAZER OUTFITTER PACKAGE
SIDEKICK OUTFITTER PACKAGE
SIDEKICK PINK OUTFITTER PACKAGE

<u>CROSSBOWS:</u>

GALE FORCE # X115
TORNADO F4 #X120
HORNET EXTREME # X215
CONCORDE #X110

<u>CROSSBOW PACKAGES:</u>

GALE FORCE PACKAGE
TORNADO F4 PACKAGE
HORNET EXTREME PACKAGE
CONCORD PACKAGE

<u>STRING SUPPRESSOR KITS:</u>

CYCLONES (EXCLUDES 2008) & TORNADO # 38-233
BUSHWACKER, ENFORCER & PANTHER # 38-234
HORNET EXTREME # 38-235
TOMAHAWK # 38-2351
CHALLENGER # 38-2352

***FROM THE 2011 PARKER PRODUCT GUIDE AT URL***

http://parkerbows.com/pb/2007/images/Parker_Product_Guide_2011.pdf

COMPOUND BOWS:

AMBUSHER #C200
INFERNO #C210
INFERNO FIRESTORM PACKAGE #C210-FS
WILDFIRE EXTREME #C300
BLAZER #C305
SIDEKICK EXTREME #C400
SIDEKICK PINK #C401
BLACKHAWK EZ DRAW #C205

BOW PACKAGES:

AMBUSHER PACKAGE
INFERNO PACKAGE
WILDFIRE EXTREME PACKAGE
BLAZER PACKAGE
SIDEKICK EXTREME PACKAGE
SIDEKICK PINK PACKAGE
BLACKHAWK EZ DRAW PACKAGE

CROSSBOWS:

CYCLONE EXPRESS #X100
CONCORDE #X110

CROSSBOW PACKAGES:

CYCLONE EXPRESS PACKAGE
CONCORDE PACKAGE

STRING SUPPRESSOR KITS:

CYCLONE & TORNADO # 38-233
BUSHWACKER, ENFORCER & PANTHER # 38-234
HORNET EXTREME # 38-235

# UNITED STATES DISTRICT COURT

for the

Middle District of Tennessee

| | | |
|---|---|---|
| Joseph Daniel Goade<br>(an individual) | ) ) ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. |
| Parker Compound Bows, Inc.<br>(a Virginia Corporation) | ) ) ) | |
| _Defendant_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  Parker Compound Bows, Inc.
Attn.: Registered Agent Mr. Robert O. Errett
         (Parker Compound Bows, Inc.'s CEO)
RTE 11 South
P.O. Box 105
Mint Spring, Virginia 24463

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Ralph Krisher, Esq.
2602 Merchants Walk
P.O. Box 330997
Murfreesboro, TN  37133
(615) 410-3482 tel;  (615) 396-8579 fax
ralph@krisherlawfirm.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____

_____
_Signature of Clerk or Deputy Clerk_

Civil Action No.

**PROOF OF SERVICE**
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____, a person of suitable age and discretion who resides there,

on *(date)* _____, and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____, who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States inSeptember 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Joseph Daniel Goade (an individual)

**DEFENDANTS**
Parker Compound Bows, Inc. (a Virginia Corporation)

**(b)** County of Residence of First Listed Plaintiff    Barry County, MO
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Augusta County, VA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ralph Krisher, Esq. (# 027054), 2602 Merchants Walk, P.O. Box 330997, Murfreesboro, TN 37133  (615) 410-3482

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

CONTRACT: ☐ 110 Insurance, ☐ 120 Marine, ☐ 130 Miller Act, ☐ 140 Negotiable Instrument, ☐ 150 Recovery of Overpayment & Enforcement of Judgment, ☐ 151 Medicare Act, ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans), ☐ 153 Recovery of Overpayment of Veteran's Benefits, ☐ 160 Stockholders' Suits, ☐ 190 Other Contract, ☐ 195 Contract Product Liability, ☐ 196 Franchise

TORTS — PERSONAL INJURY: ☐ 310 Airplane, ☐ 315 Airplane Product Liability, ☐ 320 Assault, Libel & Slander, ☐ 330 Federal Employers' Liability, ☐ 340 Marine, ☐ 345 Marine Product Liability, ☐ 350 Motor Vehicle, ☐ 355 Motor Vehicle Product Liability, ☐ 360 Other Personal Injury, ☐ 362 Personal Injury - Med. Malpractice

PERSONAL INJURY: ☐ 365 Personal Injury - Product Liability, ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability, ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY: ☐ 370 Other Fraud, ☐ 371 Truth in Lending, ☐ 380 Other Personal Property Damage, ☐ 385 Property Damage Product Liability

REAL PROPERTY: ☐ 210 Land Condemnation, ☐ 220 Foreclosure, ☐ 230 Rent Lease & Ejectment, ☐ 240 Torts to Land, ☐ 245 Tort Product Liability, ☐ 290 All Other Real Property

CIVIL RIGHTS: ☐ 440 Other Civil Rights, ☐ 441 Voting, ☐ 442 Employment, ☐ 443 Housing/ Accommodations, ☐ 445 Amer. w/Disabilities - Employment, ☐ 446 Amer. w/Disabilities - Other, ☐ 448 Education

PRISONER PETITIONS: ☐ 510 Motions to Vacate Sentence; Habeas Corpus: ☐ 530 General, ☐ 535 Death Penalty, ☐ 540 Mandamus & Other, ☐ 550 Civil Rights, ☐ 555 Prison Condition, ☐ 560 Civil Detainee - Conditions of Confinement

FORFEITURE/PENALTY: ☐ 625 Drug Related Seizure of Property 21 USC 881, ☐ 690 Other

LABOR: ☐ 710 Fair Labor Standards Act, ☐ 720 Labor/Mgmt. Relations, ☐ 740 Railway Labor Act, ☐ 751 Family and Medical Leave Act, ☐ 790 Other Labor Litigation, ☐ 791 Empl. Ret. Inc. Security Act

IMMIGRATION: ☐ 462 Naturalization Application, ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition), ☐ 465 Other Immigration Actions

BANKRUPTCY: ☐ 422 Appeal 28 USC 158, ☐ 423 Withdrawal 28 USC 157

PROPERTY RIGHTS: ☐ 820 Copyrights, ☒ 830 Patent, ☐ 840 Trademark

SOCIAL SECURITY: ☐ 861 HIA (1395ff), ☐ 862 Black Lung (923), ☐ 863 DIWC/DIWW (405(g)), ☐ 864 SSID Title XVI, ☐ 865 RSI (405(g))

FEDERAL TAX SUITS: ☐ 870 Taxes (U.S. Plaintiff or Defendant), ☐ 871 IRS—Third Party 26 USC 7609

OTHER STATUTES: ☐ 375 False Claims Act, ☐ 400 State Reapportionment, ☐ 410 Antitrust, ☐ 430 Banks and Banking, ☐ 450 Commerce, ☐ 460 Deportation, ☐ 470 Racketeer Influenced and Corrupt Organizations, ☐ 480 Consumer Credit, ☐ 490 Cable/Sat TV, ☐ 850 Securities/Commodities/ Exchange, ☐ 890 Other Statutory Actions, ☐ 891 Agricultural Acts, ☐ 893 Environmental Matters, ☐ 895 Freedom of Information Act, ☐ 896 Arbitration, ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision, ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
35 U.S.C. § 271
Brief description of cause:
Infringement of U.S. Letters Patent

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:    JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE    DOCKET NUMBER

DATE 10/03/2015    SIGNATURE OF ATTORNEY OF RECORD    /s/ Ralph Krisher

FOR OFFICE USE ONLY
RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.**      **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**      **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to  suits under 28 U.S.C. 1331, where jurisdicti on arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.**      **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**      **Nature of Suit**.  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in S ection VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**      **Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**      **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause **Do not cite jurisdictional statutes unless diversity**.          Example:          U.S. Civil Statute: 47 USC 553
                                                                                    Brief Description: Unauthorized reception of cable service

**VII.**      **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**      **Related Cases**.  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.